IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILLY G. WILLIAMS and
JUDY B. WILLIAMS,

        Plaintiffs,

vs.                                              Civ. No. 00-290 MV/WDS

MARK A. ALLSUP and
JESSICA A. ALLSUP,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Partial Motion for Summary Judgment, filed July 22, 2002 **[Doc. No. 72]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Plaintiffs' motion is not well-taken and will be **DENIED.**

## BACKGROUND

On or about June 10, 1998, Plaintiffs Billy G. Williams and Judy B. Williams entered into a contract (the "Contract") with Defendants Mark A. Allsup and Jessica A. Allsup to purchase their house located at 1415 Gidding Street in Clovis, New Mexico (the "House"). The House was built prior to 1978. Before the Contract was signed, Defendants did not disclose to Plaintiffs the presence of lead-based paint or lead-based paint hazards in the House and did not provide Plaintiffs with a lead hazard information pamphlet, any lead hazard information reports or any other documents disclosing the possibility of lead-based paint in the House. Similarly, there was no provision in the Contract that would have put Plaintiffs on notice of the possibility of lead-based paint in the House.

In or about April 1999, Plaintiffs advised Defendants of the presence of lead-based paint in the House and requested that Defendants rescind the Contract. Defendants rejected this request. Thereafter, on February 29, 2000, Plaintiffs filed a Complaint against Defendants alleging violations of the Residential Lead-Based Paint Hazard Reduction Act of 1992 (the "Act"), fraudulent misrepresentation or concealment, negligence and prima facie tort. On July 22, 2002, Plaintiffs brought the instant motion for partial summary judgment on Count I of the Complaint which alleges violations of the Act. Defendants' response in opposition was filed on August 16, 2002. Plaintiffs' reply followed on September 4, 2002.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the

nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

Section 1018 of the Act sets forth certain requirements that apply to sellers of residential housing built before 1978, with certain exceptions. *See* 42 U.S.C. §4852d. Specifically, the seller is required to provide the purchaser with a lead hazard information pamphlet; to disclose to the purchaser the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing, and provide the purchaser any lead hazard evaluation report available to the seller; and to permit the purchaser a 10-day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards. *See* 42 U.S.C. §4852d(1)(1)(A)-(C). In addition, the contract for the purchase and sale of a house built before 1978 must contain a Lead Warning Statement and a statement signed by the purchaser that the purchaser has: read the Lead Warning Statement and understands its contents, received a lead hazard information pamphlet; and had a

10-day opportunity before becoming obligated under the contract to purchase the house to conduct a risk assessment or inspection for the presence of lead-based paint hazards. *See* 42 U.S.C. §4852d(2)(A)-(C). The Act provides that "[a]ny person who knowingly violates the provisions of [§4852d] shall be jointly and severally liable to the purchaser . . . in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. §4852d(b)(3). For purposes of the Act, "knowingly" has been interpreted to mean that "defendant was aware of his or her conduct and that defendant did not perform it merely through ignorance, mistake or accident." *See Smith v. Coldwell Banker Real Estate Servs., Inc.*, 122 F. Supp.2d 267, 273 (D. Conn. 2000).

Although Plaintiffs do not specify precisely how Defendants allegedly violated the Act, based upon Plaintiffs' statement of facts, the Court assumes that it is Plaintiffs' contention that Defendants violated the Act by failing to disclose the presence of any known lead-based paint or any known lead-based paint hazards in the House, failing to provide Plaintiffs with a lead hazard information pamphlet, failing to include in the Contract a Lead Warning Statement and failing to permit Plaintiffs a 10-day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards. Defendants contend that they did not know of any lead-based paint or lead-based paint hazards in the House. If Defendants in fact did not *know* of any lead-based paint or lead-based paint hazards in the House, it follows that it would have been impossible for them to make disclosures of any *known* lead-based paint or any *known* lead-based paint hazards in the House.

Plaintiffs contend that the following deposition testimony of Defendant Mark Allsup constitutes an admission that Defendants in fact did know of the existence of lead-based paint

-4-

and/or lead-based paint hazards in the House:

>   Q: Tell me about the meeting and what Mr. Williams indicated to you.
>
>   A: Well, as I recall, he asked me what I knew about lead paint in the house and I said that I don't – of course, at that time I had learned about the – or about that time I'd learned about the disclosure form and so that's where I figured that it was going, but I said that I don't have any specific knowledge about it, that, you know, that the house was an old house and probably has lead paint.
>
>   Q: And did you say that to Mr. Williams in that meeting?
>
>   A: Yeah.
>
>   Q: That the house probably had lead-based paint?
>
>   A: I said either that or I suspected it might, or something to that effect, because I obviously didn't have any direct knowledge of it, but do have an assumption that it does.
>
>   * * *
>
>   Q: Did you indicate to Mr. Williams that you had painted over the lead-based paint in the house?
>
>   A: I told him we weren't concerned about it because we had painted the house thoroughly. We painted every surface in the house.
>
>   Q: Did you state to him that, quote, all old houses have lead-based paint?
>
>   A: I said something to that effect, probably.

Transcript of Deposition of Mark A. Allsup dated February 26, 2001 at 107-08.

The Court does not agree that this testimony amounts to an admission of Defendants' knowledge of lead-based paint or lead-based paint hazards in the House. Rather, this testimony reveals that Defendant Mark Allsup denies any "specific" or "direct" knowledge about lead paint in the House. At best, this testimony establishes that Defendant Mark Allsup "suspected" or had

"an assumption" that the House might have lead paint, and that his suspicions and/or assumptions were based only upon a generalized knowledge that all "old" houses have lead-based paint. Such suspicions and/or assumptions based upon generalized knowledge alone are not sufficient to establish an undisputed factual basis for Plaintiffs' claim that Defendants violated the Act by failing to disclose any known lead-based paint or any known lead-based paint hazards in the House. There thus is a material dispute regarding whether Defendants violated the Act on this basis.

With regard to Plaintiffs' claim that Defendants violated the Act by failing to provide Plaintiffs with a lead hazard information pamphlet and failing to include in the Contract a Lead Warning Statement, Defendants do not dispute that they never provided Plaintiffs with a copy of either of these documents. Similarly, with regard to Plaintiffs' claim that Defendants failed to permit Plaintiffs a 10-day period to conduct a risk assessment or inspection for the presence of lead-based paint hazards, Defendants do not dispute that they never advised Plaintiffs of their right to such a 10-day period. Accordingly, the Court finds that there is no material dispute that Defendants violated the Act by not providing Plaintiffs with a lead hazard information pamphlet or a Lead Warning Statement and by not permitting Plaintiffs a 10-day period in which to conduct a risk assessment or inspection. *See Id.* at 272.

The statute, however, imposes civil liability only for "knowingly violating" one of the Act's requirements. The issue thus is whether there exists any dispute of material fact as to whether Defendants "knowingly violated" the Act by not providing Plaintiffs with a lead hazard information pamphlet or a Lead Warning Statement and by not permitting Plaintiffs a 10-day period to conduct a risk assessment or inspection. Plaintiffs point to the above-quoted deposition

testimony of Defendant Mark Allsup as evidence that Defendants acted knowingly. The Court does not find this testimony sufficient to establish that Defendants knew that the existence of potential lead paint hazards should be disclosed, that Defendants knew they were required to permit Plaintiffs a 10-day period to conduct a risk assessment or inspection or that Defendants were aware of the disclosure requirements which they violated. *See Id.* at 274. Accordingly, Plaintiffs' evidence fails to support a reasonable inference that Defendants "knowingly" violated the Act. *See Id.* at 275. As there is insufficient evidence to establish Defendants' knowledge, summary judgment is precluded. *See Id.*

## CONCLUSION

A material dispute exists regarding whether Defendants violated the Act by failing to disclose any known lead-based paint or any known lead-based paint hazards in the House. In addition, a material dispute exists regarding whether Defendants "knowingly violated" the Act by not providing Plaintiffs with a lead hazard information pamphlet or a Lead Warning Statement and by not permitting Plaintiffs a 10-day period to conduct a risk assessment or inspection. Accordingly, summary judgment is precluded.

**IT IS THEREFORE ORDERED** that Plaintiffs' Partial Motion for Summary Judgment **[Doc. No. 72]** is **DENIED**.

**DATED** this 18th day of September, 2003.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorney for Plaintiffs</u>:
Robert T. Booms, Esq.

<u>Attorney for Defendants</u>:
Chris Key, Esq.